# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

JACK A. MORRIS, JR.,

      Defendant.

Case No. 2:13-cr-00086(1)-GLF
JUDGE GREGORY L. FROST

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Jack A. Morris, Jr.'s Motion to Suppress. (ECF No. 75.) Defendant moves to suppress all statements made during an interrogation in which the questioning officer failed to re-Mirandize Defendant. Due to the timing of the motion, the Government did not file a response. For the following reasons, this Court finds that Defendant's motion is well taken and **GRANTS** the same.

### I. Finding of Facts

At the Motion to Suppress hearing conducted on July 23, 2013, one witness testified on behalf of the Government. Defendant elected to present no witnesses. From the testimony and exhibits presented, the Court finds the facts to be as follows:

Detective Matthew Fulmer was called to testify by the Government. He has been a Gahanna, Ohio law enforcement officer for five years and a narcotics detective with that police department for the last year. Detective Fulmer was involved with the investigation of Defendant since October 2012 and was present when a search warrant was executed on Defendant's

1

residence on November 9, 2012. Illegal drugs and firearms were recovered from the residence, and Defendant was arrested at that time.

Defendant was transported to the Gahanna Police Department for processing, and Detective Fulmer initiated an interrogation of Defendant. At the beginning of the interview, Defendant was read his *Miranda* rights and Defendant signed a form waiving his rights. (Gov't's Ex. K-1.) The interview was video and audio recorded. (Gov't's Ex. K-2.) Portions of the interrogation were played during the hearing. It is apparent from the testimony and the video portions played at the hearing that Defendant knowingly, voluntarily, and intelligently waived his rights and agreed to talk to the detective.

Defendant and the detective spoke in generalities regarding the problems that the central Ohio area was going to have with heroin, that Defendant did not have any automatic weapons at his residence, that Defendant was in possession of the detective's personal business card, and that Defendant could assist the police. The dialogue was open, and Defendant freely talked with the detective. Defendant never indicated that he wanted to stop talking or that he wanted an attorney.

Defendant stated that he attended college for some time and had a 4.0 grade point average while attending Columbus State Community College. Defendant indicated that he almost "became a cop" himself. Defendant further stated that he was an armed security officer at one time and that he was about to become a bail bondsman.

Because of time constraints, the interview lasted only twenty minutes. Defendant was required to be processed at that time and was thereafter transported to the Franklin County Jail

located in downtown Columbus, Ohio. Before the interview ended, Detective Fulmer asked whether he could talk with Defendant again at a later time and, according to the detective, Defendant nodded his assent.

Some time after his arrest and initial interview on November 9, 2012, Defendant was transferred from the Franklin County Jail facility downtown to the Franklin County Jail facility on Jackson Pike.

Four days after Defendant's first interview at the Gahanna Police Department, on November 13, 2012, Detective Fulmer went to the Franklin County Jail facility on Jackson Pike. Detective Fulmer testified that he thought someone had told him that Defendant wanted to see him, but the detective could not remember who had told him that or approximately when he thought he received that message. It is clear, however, that Defendant did not personally request to see the detective or initiate a second interview.

Detective Fulmer audio taped the interview on November 13, 2012, but Defendant was not advised that the interview was being recorded. (Gov't's Ex. K-3.) The recording device was hidden from Defendant. Detective Fulmer began the interview by telling Defendant that the detective understood that Defendant wanted to see him. Defendant responded by saying that he did not ask to see the detective and that Defendant could not help him now.

This interview lasted approximately three hours and, according to the testimony, went into detail regarding the investigation of Defendant. Detective Fulmer did not re-read Defendant his *Miranda* rights on November 13, 2012, and Defendant was not asked to execute a rights waiver form on that date. Defendant was not reminded that he had previously executed a waiver

3

form, and no mention of the previous *Miranda* rights warning and waiver was ever made during this interview.  It is the substance of this interrogation that Defendant seeks to suppress.

There was another interview of Defendant on November 20, 2012, but the Government informed the Court that it does not intend to use any of the November 20, 2012 interview at trial. It is uncontroverted that Defendant was not read his *Miranda* rights or asked to sign a waiver of rights on this occasion and that no mention was made to Defendant of the previous rights and waiver form that Defendant initially signed on November 9, 2012.

## II. Standard Involved

Statements made by a defendant during a custodial interrogation are subject to suppression unless the Government can show a knowing, voluntary, and intelligent waiver of the defendant's constitutional rights.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1996).  Once the defendant has proven by a preponderance of the evidence that he was subjected to a custodial interrogation, the Government has the burden to prove a knowing, voluntary, and intelligent waiver by a preponderance of the evidence.  *Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986). To meet its burden, the Government must show that, under the totality of the circumstances, the defendant understood his rights and the consequences of abandoning them.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Once a *Miranda* warning has been administered to the defendant, it does not have to be re-administered after every break in interrogation.  *Wyrick v. Fields*, 459 U.S. 42, 43-49 (1982). Additional warnings are necessary if circumstances have seriously changed between the warning

4

and the custodial interrogation being challenged. *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010).

"The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir. 1997) (quoting *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995)). Instead, the court applies a totality of the circumstances test when determining whether a delay between a *Miranda* warning and a subsequent interrogation necessitated that a defendant be re-advised of his rights by the interrogating officers. *Treesh*, 612 F.3d at 431. The essential questions are (1) whether the defendant knew and understood his rights at the time the *Miranda* warning was given by interrogators and (2) whether anything happened in the time between when the defendant received the warning and the challenged statements that "rendered Defendant unable to fully consider the effect of an exercise or waiver of those rights before speaking with police." *United States v. Jones*, 147 F. Supp. 2d 752, 761 (E.D. Mich. 2001).

### III. Analysis

It is not disputed that Defendant was subject to a custodial interrogation on November 13, 2012. The Defendant also does not dispute that he knowingly, voluntarily, and intelligently waived his *Miranda* rights on November 9, 2012, and the validity of that waiver is not in question. The sole question before this Court is whether the November 9, 2012 *Miranda* warning and waiver were still effective to apprise Defendant of his constitutional rights on November 13, 2012, or if the totality of the circumstances required that Defendant be re-advised of his rights at that time.

There is not an exhaustive list of factors that a court can consider in determining whether circumstances have changed enough to render a *Miranda* warning or waiver stale.  Some of the factors that courts can take into account are the amount of time that has elapsed between the warning and the statements, whether there were subsequent reminders or re-warnings after the initial reading and waiver, whether the interrogation occured in the same or a different location than the warning, whether the defendant initiated the interview, and the substance of the Mirandized interrogation compared to subsequent interrogations.  *See Treesh*, 612 F.3d at 432; *United States v. White*, 68 F. App'x 535, 538 (6th Cir. 2003); *Weekley*, 130 F.3d at 751; *United States v. Square*, 790 F. Supp. 2d 626, 653 (N.D. Ohio 2011); *Jones*, 147 F. Supp. 2d at 761-62.

Four days lapsed between the time that Defendant was advised of his *Miranda* rights and signed a waiver on November 9, 2012, and when Detective Fulmer conducted the second, un-Mirandized interrogation on November 13, 2012.  Although the passage of time alone does not necessarily require the police to provide a fresh warning, it is one of the factors to be considered in the totality of the circumstances.  *Jones*, 147 F. Supp. 2d at 761.  In *Jones*, the court found that a lapse of only eighteen hours was sufficient to make the *Miranda* warnings stale under the totality of the circumstances.  *Id.* at 761-62.  But courts have also recognized that three days is not too long in certain situations.  *White*, 68 F. App'x at 538.  Time is a factor that can exacerbate or diminish other factors under the circumstances.  The passage of four days allowed for a great deal of changes to occur in this case, and unlike the defendant in *White*, Defendant in this case was not, at any time, even summarily reminded of his rights or that he had discussed and waived those rights at a previous time.  *Id.*

6

During the four days between receiving his *Miranda* rights and making the statements at issue, Defendant was moved to a different location not once, but twice.  The initial interview and waiver occurred at the Gahanna Police Department.  This is where Defendant was advised of his *Miranda* rights.  After the interview, Defendant was transferred twice; first to the Franklin County Jail facility downtown and then to the Franklin County Jail facility on Jackson Pike.  The second interview occurred at the Jackson Pike facility.

Furthermore, Defendant did not initiate this second interview.  Even if Detective Fulmer was informed by a third-party that Defendant was interested in speaking with him, the detective was not informed by Defendant himself.  And any indication that Defendant had sought out the interview was quickly dispelled when Defendant made it clear that he did not ask to speak with the detective.  Even if a third party had communicated Defendant's interest in a meeting to the detective, Defendant's repeated disavowal of any such request should have sufficiently put the detective on notice that Defendant could no longer be regarded as initiating the second interview.

The substance and duration of the interviews were significantly different.  On November 9, 2012, Defendant discussed general topics related to drugs and weapons and his personal history.  Defendant was only questioned for roughly twenty minutes during the first interview.  Defendant did not discuss the specifics of the investigation against him with Detective Fulmer.  At the second interview, on November 13, 2012, the circumstances were considerably changed.  Defendant discussed specific topics related to the investigation against him.  The interrogation lasted approximately three hours, much longer than the first interview.  Detective Fulmer secretly recorded this interrogation without informing Defendant that it was being recorded, hid

7

the recorder from Defendant, and did not, in any way, re-advise Defendant that anything he said could be used against him in subsequent criminal proceedings.

The Government's argument that Defendant is an educated, intelligent man who fully understood his rights does not overcome the significant changes that took place between November 9, 2012, and November 13, 2012. Courts have recognized that a defendant's understanding of his rights at the time a *Miranda* warning is given, subsequent indications that the defendant remembers and understands his rights, or the defendant's familiarity with the criminal justice system are factors to be considered. *See Treesh*, 612 F.3d at 432; *White*, 68 F. App'x at 538; *Taylor v. Ludwick*, No. 2:08-cv-11823, 2009 WL 3462542, at *6 (E.D. Mich. Oct. 22, 2009). But intelligence does not necessarily equate to understanding and appreciating one's rights. In this case, four days had lapsed between the waiver and the interrogation, and Defendant never made any indication that he remembered his rights during the November 13, 2012 interrogation. Defendant did not make reference to his rights or invoke any of his rights. He did not assert the right to stop the interview even after expressly telling Detective Fulmer that he did not ask to speak with the detective and could not now help the detective.

There is no evidence in the record to indicate that, despite at least one prior arrest, Defendant had previous encounters in which police gave him his *Miranda* rights or that he was familiar with his constitutional rights in any meaningful way. Defendant's statement that he was once going to "become a cop" does not mean that he is familiar with the *Miranda* warnings. There is no indication that Defendant ever actually attempted to complete the police academy, that Defendant received training to become a police officer, or that Defendant had done anything

more than once harbor a desire to pursue a career as a law enforcement officer.  Defendant's desire to "become a cop" does not make him any more trained in his constitutional *Miranda* rights than this Court would be trained in the intricacies of a car engine if it suddenly expressed a desire to become a mechanic.  Defendant's educational background and intelligence alone are not sufficient to show that he should have known and remembered his rights after a four-day lapse.  There are simply not enough factors, in addition to Defendant's education and intelligence, for the Government to overcome the changes that occurred between the waiver and the interrogation.

Under the totality of the circumstances, this Court concludes that the Government has failed to meet its burden.  The changes in Defendant's situation between November 9, 2012, and November 13, 2012 were sufficiently serious to render Defendant unable to effectively evaluate his constitutional rights and the implications of a decision to waive those rights.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Suppress.  (ECF No. 75.)  The Government may not introduce evidence or testimony at trial regarding the statements given by Defendant to Detective Fulmer on November 13, 2012.

**IT IS SO ORDERED**.

                 /s/ Gregory L. Frost
              GREGORY L. FROST
              UNITED STATES DISTRICT JUDGE